UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-61955-CIV-ALTMAN

ANNETTE CAVE,

    *Plaintiff,*

*v.*

BARRY STONE, *et al.*,

    *Defendants.*

_____/

## ORDER

Annette Cave—a defendant in several Florida state-court cases—wants us to hold the judges in those cases liable for (what she characterizes as) blatant constitutional violations. She asks us—not for the first time—to intervene in those cases, to overturn those judges' decisions, and to compel a Florida chief judge to act on her behalf. Since we lack the power to do any of those things, we **GRANT without prejudice** the Defendants' Motion to Dismiss ("Motion") [ECF No. 24] the Verified Amended Complaint ("Amended Complaint") [ECF No. 23].

### OUR SOURCES

We begin with a word about our sources. Normally, on a motion to dismiss, we'd have to limit our analysis to the four corners of the complaint. Here, though, we'll consider the dockets in Ms. Cave's state-court cases—and the documents filed on those dockets—because the Defendants have challenged the Amended Complaint under *both* Rules 12(b)(1) and 12(b)(6). *Figueroa v. Merscorp, Inc.*, 766 F. Supp. 2d 1305, 1308 n.2 ("[B]ecause Defendants move to dismiss the Complaint in part under Federal Rule of Civil Procedure 12(b)(1), the Court may consider matters outside the pleadings, and no presumption attaches to Plaintiff's allegations."). Where a Rule 12(b)(1) motion presents a *factual* (as opposed to a strictly *facial*) assault, the court "may proceed as it never could under 12(b)(6) or Fed.

R. Civ. P. 56"; in such cases, the court has "substantial authority" to "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981)). "[A] factual attack challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings[.]" *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233–34 (11th Cir. 2018). Here, the Defendants attach to their Motion several exhibits—"material extrinsic from the pleadings," *id.*—which they use to dispute Ms. Cave's factual allegations about what happened in the state-court cases, *see* Ex. A – Civil Docket in *U.S. Bank Nat'l Ass'n v. Clancy et al.*, No. CACE-15-020223 ("Judge Stone Docket") [ECF No. 24-1]; Ex. B – Criminal Misdemeanor Docket in *Florida v. Cave*, No. 18-000121-MM-10A ("Judge Levy Docket") [ECF No. 24-2]; Ex. C – Criminal Felony Docket in *Florida v. Cave*, No. 18-000174-CF-10A ("Judge Lynch Docket") [ECF No. 24-3]. Indeed, in their Motion, the Defendants expressly claim that Ms. Cave "ma[de] inaccurate statements" in her Amended Complaint. Motion at 3. And, as we'll see, some of these inaccuracies bear directly on our subject-matter jurisdiction. For example, the Motion challenges Ms. Cave's averments on the extent to which Chief Judge Tuter has the authority to intervene in the decisions of his colleagues. *Id.* The Motion also directly contradicts Ms. Cave's assertions about the nature of the case before Judge Levy. *Id.* And these factual disputes, as we're about to explain, drive our standing analysis for the counts against Chief Judge Tuter and Judge Levy, respectively, *see infra* Section I.B. Since the Defendants have thus raised a *factual* challenge to our jurisdiction, we may, in resolving that challenge, consider "material extrinsic from the pleadings."

Even if the Motion hadn't advanced a factual challenge under Rule 12(b)(1), though, we'd likely take judicial notice of these extrinsic documents anyway. Federal Rule of Evidence 201 permits a federal court to take judicial notice of state-court records because, generally, those records "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

*Paez v. Sec'y Fla. Dep't of Corr.*, 947 F.3d 649, 652 (11th Cir. 2020) (quoting Fᴇᴅ. R. Eᴠɪᴅ. 201(b)). "Rule 201 does not require courts to warn parties before taking judicial notice of some fact, but, upon the party's request, it does require an opportunity to be heard after the court takes notice." *Id.* "The reason for this caution is that the taking of judicial notice bypasses the safeguards which are involved with the usual process of proving facts by competent evidence in [the] district court." *Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC*, 369 F.3d 1197, 1205 (11th Cir. 2004) (quoting *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997)).

We'll therefore allow this Order to serve as notice of our intent to take judicial notice of the state-court dockets.[1] If the Plaintiff objects to this decision, she may note that objection in a motion for reconsideration. Any such objection must be filed **within 28 days** of this Order and **may be no more than five pages in length**. If the motion for reconsideration is late or exceeds **five pages**, it will be stricken for non-compliance.

## Tʜᴇ Fᴀᴄᴛs

Ms. Cave has been the defendant in three state-court cases. *See* Judge Stone Docket; Judge Levy Docket; Judge Lynch Docket. The first was a civil-foreclosure action, in which Ms. Cave lost title to a property. *See* Judge Stone Docket at 2, 4 (noting that Ms. Cave lost title to the property in this final foreclosure judgment). Judge Joel Lazarus initially presided over the case until (Ms. Cave says) he claimed to lack jurisdiction. *See* Amended Complaint at 9.[2] Judge Barry J. Stone then took over the case. *See id.* at 11. Ms. Cave believes that—like Judge Lazarus—Judge Stone was without

---

[1] When we refer to the state-court dockets, we mean both the versions the Defendants attached as exhibits to their Motion and the dockets as they currently appear on the website of the Broward Clerk of Court, available at:
https://www.browardclerk.org/Web2/CaseSearchECA/CaseDetail/?caseid=OTg5MjA2MQ%3d%3d-1oC5mk9MJA8%3d&caseNum=18000174CF10A

[2] Because the Amended Complaint's paragraphs are inconsistently numbered, we refer only to page numbers.

jurisdiction to preside over the litigation and that, as a result, his orders are void and unconstitutional. *Id.* Thus arguing that the foreclosure action was a nullity, *see generally id.* at 14–16, she claims ownership over the property, *see id.* at 17 (claiming to be a "secured party creditor who was in lawful possession" of the property); *see also* Judge Stone Docket at 9–11 (listing various motions to vacate the foreclosure and other objections filed by Ms. Cave), and has reentered it multiple times, *see* Amended Complaint at 17 (recognizing that "Cave was living at the subject property" at the time of the later trespassing charge).

The two other cases are criminal actions, in which Ms. Cave was charged with trespassing onto the foreclosed property. *See generally* Amended Complaint; *see also* Motion at 3 (describing these cases). Suggesting that these criminal cases "piggyback[ed]" onto the unconstitutional foreclosure action, *see* Amended Complaint at 26, Ms. Cave denounces the decisions in these criminal cases as similarly void and unconstitutional, *see, e.g., id.* at 23 (describing Judge Levy's orders as "void for lack of jurisdiction, fraud and multiple due process violations"), *id.* at 29–30 (discussing various constitutional deficiencies Judge Lynch allegedly ignored). Judges Jill K. Levy and Michael J. Lynch have presided over these two cases. *See* Motion at 3–4. Judge Levy presided over the misdemeanor action in County Court, where Ms. Cave was found guilty of trespassing. *See id.* at 3; Judge Levy Docket at 2, 4. Ms. Cave appealed that decision, and the circuit court affirmed. *See* Motion at 3; Judge Levy Docket at 5. For whatever reason, Ms. Cave then elected *not* to challenge the circuit court's decision before the District Court of Appeal. *See* Motion at 3. Judge Lynch presided over the felony criminal case. *Id.*; Judge Lynch Docket at 2. On three occasions, Ms. Cave tried to remove the felony case to this Court—all without success. *See* Motion at 3–4.[3] When the Defendants filed this Motion to Dismiss, the case before Judge Lynch hadn't been resolved. *See id.* at 4; *see generally* Judge Lynch Docket. But, just a few weeks ago, the State

---

[3] These cases are 19-cv-61830-RS, 19-cv-61944-RKA, and 20-cv-60540-RAR.

dismissed all charges against Ms. Cave in the case before Judge Lynch. *See* Disposition, *Florida v. Cave*, No. 18-000174-CF-10A (Fla. 17th Cir. Ct. Aug. 30, 2021).[4]

Unhappy with how these cases had been (or were being) adjudicated, Ms. Cave sued Judges Stone, Levy, and Lynch here.[5] *See generally* Amended Complaint. She's also sued Chief Judge Jack Tuter, *id.* at 37—currently the chief judge of Florida's Seventeenth Judicial Circuit, *see* Motion at 4. Ms. Cave claims that she told Chief Judge Tuter about the other defendants' unconstitutional actions and that, despite these warnings, he failed to intervene. *See* Amended Complaint at 9–14. In doing so, Ms. Cave says, he failed in his supervisory duty to "administ[er] justice, not injustice." *Id.* at 10.

## Procedural History

Ms. Cave filed her original complaint in September 2020. *See* Verified Complaint [ECF No. 1]. In February 2021, the Defendants filed their first Motion to Dismiss.[6] *See* Defendants' First Motion to Dismiss [ECF No. 20]. Two weeks later, Ms. Cave filed her now-operative Verified First Amended Complaint. *See* Amended Complaint.

The Amended Complaint asserts five claims under 42 U.S.C. § 1983 against four defendants— Judges Tuter, Stone, Levy, and Lynch—in both their individual and official capacities. *Id.* at 37–40. In Count I, Ms. Cave seeks injunctive relief against Chief Judge Tuter for his (alleged) failure to prevent the other judges' unconstitutional decisions. *Id.* at 37–38.

---

[4] We found this recent disposition when we were scouring the website of the Broward Clerk of Court on our own. It's available at https://www.browardclerk.org/Web2/CaseSearchECA/CaseDetail/?caseid=OTg5MjA2MQ%3d%3d-1oC5mk9MJA8%3d&caseNum=18000174CF10A (last visited Sept. 27, 2021).

[5] Judge Lazarus is not a Defendant in this case—presumably because Ms. Cave was satisfied with his withdrawal from the foreclosure action. Ms. Cave also occasionally mentions a Judge Rodriguez— though it's unclear what role Judge Rodriguez may have played in our story. *See, e.g.*, Amended Complaint at 11. Nevertheless, as with Judge Lazarus, Ms. Cave doesn't bring any claims against Judge Rodriguez, because (she says) he (or she) also claimed to lack jurisdiction. *See id.*

[6] It took several months for Ms. Cave to perfect service. *See generally* Docket. During some portion of that time, the case was administratively closed. *See id.* We ultimately denied the first Motion to Dismiss as moot in light of the filing of the Amended Complaint. *See* Order [ECF No. 36].

In Count II, she alleges that Judge Stone violated her procedural due-process rights under the Fifth Amendment to the U.S. Constitution and Sections 9[7] and 21[8] of Article I of the Florida Constitution. *Id.* at 38. In this count, Ms. Cave objects to some of Judge Stone's decisions—especially a March 2018 order that "den[ied] [Ms. Cave's] constitutional rights to redress civil issues while the criminal division continued on with their fraudulent prosecutions." *Id.* 14–15. In reality, the order simply blocked Ms. Cave from filing any additional post-judgment motions *unless* those motions were (1) related to her appeal or (2) signed by a member of the Florida Bar. *See* Judge Stone Docket at 5 (listing a "Final Order on Pending Motion and Order Directing the Clerk of the Court to Not File any Further Post-Trial Motions Unless Realted [sic] to an Appeal in the 4th DCA or Signed by a Member of the Florida Bar").

In Count III, Ms. Cave avers that Judge Levy violated her rights under the Fourteenth Amendment to the U.S. Constitution by "fail[ing] to traverse"[9] Ms. Cave's motion to dismiss the misdemeanor case against her. *See* Amended Complaint at 19, 38–39. She also claims that (1) Judge Levy denied her right to a fair trial by admitting "fabricated evidence," *id.* at 21; and (2) Judge Levy failed to act as an impartial judge when she instructed the jury, *id.* at 23.

---

[7] Article I, Section 9 of the Florida Constitution provides: "No person shall be deprived of life, liberty or property without due process of law, or be twice put in jeopardy for the same offense, or be compelled in any criminal matter to be a witness against oneself."

[8] Article I, Section 21 of the Florida Constitution says: "The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay."

[9] Ms. Cave doesn't explain what she means when she says that Judge Levy "failed to traverse," and her usage doesn't seem to align with the common definition of that term. *See Traverse*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("A formal denial of a factual allegation made in the opposing party's pleading."). Judging from the context, our best guess is that she's castigating the judge for failing to hold a hearing on the motion to dismiss. *See* Amended Complaint at 19–20 ("[Judge Levy] violated Cave's right to the 14th amendment because the State failed to traverse Cave's Sworn Motion to Dismiss. . . . There was a bait and switch hearing where Judge Levy only heard the motion to suppress in which [Judge Levy], knowing the evidence was fabricated and in violation of the 4th amendment. Judge Levy arbitrarily refused to have the hearing for Cave's Motion to Dismiss and violated due process.").

In Count IV, she contends that Judge Levy orchestrated an unconstitutional taking in violation of the Fifth Amendment's Takings Clause. *Id.* at 39.

In Count V, she says that Judge Lynch violated her Fifth, Sixth, and Fourteenth Amendment rights—as well as her rights under Sections 1,[10] 9, and 15[11] of Article I of the Florida Constitution. *Id.* at 40. Here, Ms. Cave challenges Judge Lynch's decisions (1) ordering her to undergo a competency evaluation, *id.* at 27; and (2) allowing her to file various motions only to "buy out the statute of limitation clock on the judgement [sic]," *id.* at 29. She also claims to have shown that Judge Lynch lacked subject-matter jurisdiction over her case. *Id.* at 29–30. She's established this, she insists, by "prov[ing]" that the police report was riddled with perjury, by invoking the Interstate Commerce Clause, and by establishing that the prosecution violated her rights under the Double Jeopardy Clause.[12] *Id.* Finally, although it's not included in any count, Ms. Cave alleges that Judges Levy and Lynch colluded to waste her time. *Id.* at 26.

---

[10] Article I, Section 1 of the Florida Constitution states: "All political power is inherent in the people. The enunciation herein of certain rights shall not be construed to deny or impair others retained by the people."

[11] Article I, Section 15 of the Florida Constitution provides:

> (a)   No person shall be tried for capital crime without presentment or indictment by a grand jury, or for other felony without such presentment or indictment or an information under oath filed by the prosecuting officer of the court, except persons on active duty in the militia when tried by courts martial.
> (b)   When authorized by law, a child as therein defined may be charged with a violation of law as an act of delinquency instead of crime and tried without a jury or other requirements applicable to criminal cases. Any child so charged shall, upon demand made as provided by law before a trial in a juvenile proceeding, be tried in an appropriate court as an adult. A child found delinquent shall be disciplined as provided by law.

[12] Ms. Cave never really explains how she's *proved* any of these things—or, even if she had, why they would be relevant. Especially confusing is the claim about authority under (presumably) the Interstate Commerce Clause. Our best guess is that this would relate to Ms. Cave's attempts to remove the case to federal court. The Double Jeopardy claim seems particularly unfounded given that the two criminal

One week later, the Defendants filed their renewed Motion to Dismiss. *See generally* Motion. This second Motion argues *both* that this Court lacks subject-matter jurisdiction over Ms. Cave's lawsuit *and* that her Amended Complaint fails to state a plausible claim. *Id.* at 2. As to jurisdiction, the Motion contends that (1) Ms. Cave lacks standing to pursue injunctive relief because she hasn't shown any likelihood of *future* injury, *id.* at 7–8; (2) the Eleventh Amendment bars Ms. Cave's claims because, by suing the judges in their official capacities, Ms. Cave has effectively sued the State, *id.* at 8–11; (3) the *Rooker-Feldman* doctrine precludes her causes of action, *id.* at 11–13; and (4) the Court should abstain under *Younger v. Harris*, 401 U.S. 37 (1971), *id.* at 13. The Motion attaches the docket sheets for each of the state-court cases—*see* Judge Stone Docket; Judge Levy Docket; Judge Lynch Docket— and challenges the accuracy of Ms. Cave's description of those cases. Turning to Rule 12(b)(6), the Defendants contend that (1) Ms. Cave didn't allege enough facts to state a viable claim, *id.* at 14–15; (2) the judges are entitled to absolute judicial immunity, *id.* at 15–18; and (3) the Amended Complaint is a shotgun pleading, *id.* at 15. Finally, the Motion suggests that the dismissal should be *with* prejudice on the ground that any further emendation would be futile. *Id.* at 18–19.

Ms. Cave's Response [ECF No. 31] exceeded 80 pages—a clear violation of our Local Rules, *see* S.D. FLA. 7.1(c)(2) ("[N]either a motion and its incorporated memorandum of law nor the opposing memorandum of law shall exceed twenty (20) pages[.]"). We could've stricken the Response for this noncompliance, of course, *see id.*; *see also*, Order Providing Instructions to *Pro Se* Litigants [ECF No. 9] at 1 ("Failure to comply with the federal and local rules may result in sanctions against *pro se* litigants.")—but, recognizing that Ms. Cave is *pro se*, we elected not to, *see generally* Docket.

---

cases against Ms. Cave stem from two distinct trespasses. *Compare* Information, *Florida v. Cave*, No. 18-000121-MM-10A, at 1 (Fla. Broward Cnty. Ct. Jan. 22, 2018) (charging Ms. Cave with committing a trespass on January 3, 2018) *with* Information, *Florida v. Cave*, No. 18-000174-CF-10A, at 1 (Fla. 17th Cir. Ct. Feb. 19, 2018) (charging Ms. Cave with committing an armed trespass and engaging in criminal mischief on January 4, 2018).

The Defendants' Reply [ECF No. 34] emphasized the doctrines of justiciability, *id.* at 2–3; standing, *id.* at 3; and *Rooker-Feldman*, *id.* at 3–4. It also focused on the claims against Chief Judge Tuter—contending that Ms. Cave misunderstands the role of the Chief Judge, *id.* at 4–5—and Judge Levy—arguing that Ms. Cave misrepresents the nature of those proceedings, *id.* at 5. The Reply noted the Response's noncompliance with the Local Rules. *Id.* at 1 & n.1.

Seemingly upset that the Reply pointed out her noncompliance, Ms. Cave filed a Sur-Reply, in which she insisted that the Response's length was appropriate because (1) the Motion "implied . . . [she] had to respond against each of their doctrines and defenses against each Judge individually," Plaintiff's Reply to Defendant's [sic] Reply to Plaintiff's Response to Motion to Dismiss ("Sur-Reply") [ECF No. 35] at 2, and (2) she should be entitled to 20 pages per defendant anyway (for a total of 80), *id.* Because Ms. Cave didn't move for leave to file the Sur-Reply, *see generally* Docket, we struck the Sur-Reply, *see* Order Striking Sur-Reply [ECF No. 37]; *see also* S.D. Fla. 7.1(c) ("No further or additional memorandum of law"—beyond the motion, response, or reply—"shall be filed and served without prior leave of Court."). Displeased, Ms. Cave then objected to our decision to strike her Sur-Reply. *See* Notice of Objection ("Notice") [ECF No. 38]. Needless to say, we will consider neither the Sur-Reply nor the Notice here.

## THE LAW

Under Federal Rule of Civil Procedure 12(b), a complaint may be dismissed for one of seven defects. Two such defects are relevant here: the lack of subject-matter jurisdiction (Rule 12(b)(1)) and the failure to state a claim (Rule 12(b)(6)).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011), *aff'd*, 568 U.S. 85 (2013). Challenges under Rule 12(b)(1) come in two forms: as "[f]acial attacks on the complaint [which] require the court merely to look and see if the

plaintiff has alleged a basis for subject matter jurisdiction" or as "[f]actual attacks [which] challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings and matters outside the pleadings[.]" *Lawrence*, 919 F.2d at 1529 (cleaned up). "[A] factual attack challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings[.]" *Stalley*, 524 F.3d at 1233–34. "In a factual attack, courts are free to weigh the evidence to satisfy themselves they have the power to adjudicate the case." *Figueroa*, 766 F. Supp. 2d at 1315. In the case of factual attacks, the plaintiff's allegations don't enjoy a presumption of validity, and "the burden is on the plaintiff to prove that jurisdiction exists." *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002); *see also Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005).

When ruling on a motion to dismiss under Rule 12(b)(6), the court must accept the complaint's factual allegations as true and must construe them in the light most favorable to the plaintiff. *See, e.g.*, *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016). To survive a motion to dismiss, the complaint's factual allegations "must be enough to raise a right to relief above the speculative level"— with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Under this standard, bare legal conclusions "are not entitled to the assumption of truth" and are insufficient, standing alone, to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (cleaned up). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (cleaned up), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012).

In cases where the defendant challenges the complaint under *both* Rules 12(b)(1) and 12(b)(6), the court should consider whether there's any overlap between the jurisdictional inquiry and the merits. "[W]here a plaintiff fails to plausibly allege an element that is both a merit element of a claim

and a jurisdictional element, the district court may dismiss the claims under Rule 12(b)(1) or Rule 12(b)(6). Or both." *Brownback v. King*, ___ U.S. ___, 141 S. Ct. 740, 749 n.8 (2021). But, where the "overlap between merits and jurisdiction may not exist," the district court "might lack subject matter jurisdiction for non-merits reasons, in which case it must dismiss the case under Rule 12(b)(1)." *Id.* The district court should "rely on Rule 12(b)(1) if the facts necessary to sustain jurisdiction *do not implicate the merits of the plaintiff's cause of action.*" *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) (cleaned up).

Ms. Cave filed her complaint *pro se*. A "*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erikson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014) ("We also construe the complaint liberally because it was filed *pro se*."); *cf.* FED. R. CIV. P. 8(f) ("All pleadings shall be so construed as to do substantial justice."). Although the pleading standard for *pro se* litigants is more lenient, "this leniency does not give a court license to serve as *de facto* counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Investments, Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) (cleaned up), *overruled on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010). The requirement that "a complaint must contain sufficient facts, accepted as true, to state a claim for relief that is plausible on its face . . . also applies to *pro se* complaints." *Wells v. Miller*, 652 F. App'x 874, 875 (11th Cir. 2016); *see also Saunders*, 766 F.3d at 1266 (recognizing that the *Twombly* and *Iqbal* pleading standard apply when considering *pro se* complaints).

## ANALYSIS

### I.    Subject-Matter Jurisdiction

Because we're a court of limited jurisdiction, we "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "Any time doubt arises as to the existence of federal jurisdiction, we are obliged to address the issue before

proceeding further." *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995) (vacating and remanding a summary-judgement determination because the trial court failed to determine whether the controversy was justiciable). For this reason, if a court "determines at any point that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3). As we explain below, we *either* lack subject-matter jurisdiction *or* else we refrain from exercising jurisdiction over all of Ms. Cave's claims.

### A.       The Eleventh Amendment

As a preliminary matter, the Defendants contend that the Eleventh Amendment bars Ms. Cave's claims.[13] *See* Motion at 8–11. As the Defendants point out, "a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). And—they continue—since Ms. Cave has sued each of the Defendants in their *official* capacities, her claims trigger the Eleventh Amendment. *See* Motion at 9.

At the same time, Counts I, II, III, and V seek only *injunctive* relief, *see* Amended Complaint at 37–40, and the Eleventh Amendment "does *not* generally prohibit suits seeking only prospective injunctive or declaratory relief," *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999) (emphasis added) (citing *Green v. Mansour*, 474 U.S. 64, 68 (1982)). In other words, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." *Will*, 491

---

[13] Eleventh Amendment immunity "is a rather peculiar kind of jurisdictional issue" because, "[u]nlike most subject matter jurisdiction issues, which cannot be waived by the parties and must be raised by the court on its own initiative, the Eleventh Amendment does not automatically deprive a court of original jurisdiction." *McClendon v. Ga. Dep't of Cmty. Health*, 261 F.3d 1252, 1257 (11th Cir. 2001). "[U]nlike other jurisdictional bars, the federal courts are required to consider whether the Eleventh Amendment strips them of jurisdiction only if the state defendant insists that it does." *Id.* Since the Defendants have raised the issue of sovereign immunity here, we must address it as part of our 12(b)(1) analysis.

U.S. at 71 n.10. We therefore reject the Defendants' Eleventh Amendment arguments as to these four counts.

Whether the Eleventh Amendment applies to Count IV, however, is a trickier question. In that count, Ms. Cave seeks "to reserve all rights in the event Cave is not justly compensated pursuant to 5th amendment's takings clause, for the unlawful and unconstitutional taking of her property due to Judge Levy's wrongful actions." Amended Complaint at 40 (errors in original). Fairly read, this count *could* be construed as seeking money damages. It, after all, asks for Ms. Cave to be "justly compensated"—constitutional language the Supreme Court has interpreted as involving a request for money. *See, e.g., City of Monterey v. Del Montes Dunes at Monterey, Ltd.*, 526 U.S. 687, 710 (1999) (describing "just compensation" under the Takings Clause as, "like ordinary money damages, a compensatory remedy"). And, if Count IV *is* seeking money damages, then the Eleventh Amendment would bar that claim. *See Harbert Int'l, Inc. v. James et al.*, 157 F.3d 1271, 1279 (11th Cir. 1998) ("[W]e conclude that [the plaintiff's] Fifth Amendment Takings Clause claim against the defendants in their official capacities is barred by Eleventh Amendment sovereign immunity.").

But there's another—no less plausible—reading of Count IV, one that *wouldn't* trigger the Eleventh Amendment. In this alternate scenario, Ms. Cave *could* be asking to "reserve all rights" in case she *isn't* "justly compensated." One of the rights she could be reserving—though she doesn't say so directly—is her right to pursue injunctive relief against Judge Levy. Given that Ms. Cave is proceeding *pro se*, we'll give her the benefit of the doubt, apply this latter reading to Count IV, and deny the Defendants' Eleventh Amendment argument as to that count as well. As we'll soon see, though, this is really a pyrrhic victory for Ms. Cave.[14]

---

[14] As we discuss below, *see infra* Section I.B, whether (or not) we construe Ms. Cave's individual-capacity claim against Judge Levy (Count IV) as seeking injunctive or monetary redress, the claim fails for lack of standing.

**B.**      **Standing**

"It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). "Standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005). Standing is the "irreducible minimum required by the Constitution" for a plaintiff to proceed in federal court. *Ne. Fla. Chapter, Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 664 (1993). To establish her standing to sue, Ms. Cave must show (1) an "injury-in-fact," (2) "a causal connection between the asserted injury-in-fact and the challenged action of the defendant," and (3) "that the injury will be redressed by a favorable decision." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013).

When the plaintiff is seeking injunctive relief, "Article III requires an additional showing." *Id.* Because injunctions regulate only *future* conduct, the plaintiff must allege "a real and immediate—as opposed to merely conjectural or hypothetical—threat of *future* injury." *Id.* at 1329 (citation omitted). Notably, though, when the prospect of future injury rests on the likelihood that a plaintiff will engage in illegal conduct, the court "c[an] not find a case or controversy" because "[i]t [is] to be assumed that plaintiffs will conduct their activities within the law and so avoid prosecution and conviction." *Lyons*, 461 U.S. at 102–03 (cleaned up).

As we've said, in each of her five counts, Ms. Cave seeks injunctive (or prospective) relief.[15] Specifically, she wants (1) an injunction requiring Chief Judge Tuter to intervene in any future unconstitutional judicial decisions against Ms. Cave (Count I); (2) an order enjoining any future enforcement of Judge Stone's decisions (Counts II); (3) an order enjoining any future enforcement of

---

[15] Of course, if she weren't—if she were seeking money damages—her official-capacity claims would be barred by the Eleventh Amendment. *See supra* Section I.A.

Judge Levy's decisions (Count III); (4) an order reserving Ms. Cave's rights to seek a future injunction against Judge Levy (Count IV); and (5) an injunction preventing Judge Lynch from proceeding any further in the case that, until recently, was pending before him (Count V).[16] Ms. Cave lacks standing to pursue her claims.

In Count I—the failure-to-intervene claim against Chief Judge Tuter—Ms. Cave fails the second and third elements of the standing test (causation and redressability), *even if* she could show an injury-in-fact.[17] Recall that "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The redressability requirement, by contrast, "focus[es] on the requested relief." *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S 118, 126–27 (2014). If there's no "connection between the alleged injury and the judicial relief requested," the injury isn't redressable. *Id.*

Ms. Cave's case against Chief Judge Tuter fails both elements. To recap: Ms. Cave blames the Chief Judge for failing to stop Judges Stone, Levy, and Lynch from adjudicating the cases before them. *See* Amended Complaint at 10 (accusing Chief Judge Tuter of "mak[ing] a choice to allow Cave to be wrongfully prosecuted in his criminal division on a civil matter especially on a fraudulent civil case [and] acting outside his scope of judicial capacity as an administrative supervisor"). But Chief Judge

---

[16] To the extent Ms. Cave is asking for declaratory, rather than injunctive, relief—something she never says—she'd still lack standing because (as with her requested injunctions), she hasn't shown *any* threat (let alone a "real and immediate" threat) of future injury. "[T]o demonstrate that there is a case or controversy that satisfies Article III's standing requirement when a plaintiff is seeking declaratory relief—as opposed to seeking damages for past harm—the plaintiff must allege facts from which it appears that there is a 'substantial likelihood that he will suffer injury in the future.'" *A&M Gerber Chiropractic LLC v. Geico Gen. Ins. Co.*, 925 F.3d 1205, 1210–11 (11th Cir. 2019) (quoting *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999)).

[17] Much more on her supposed "injury-in-fact" below.

Tuter has no authority to intervene in the cases of other judges within his circuit. *See* FLA. STAT. §

43.26(2) (2021) (listing the powers of the chief judge of each circuit and omitting any authority to

intervene in the cases before other judges). That's because, under Florida law, "a chief judge has no

appellate jurisdiction over the cases filed in his court . . . [and] one circuit judge cannot reverse the

prior orders of another circuit judge." *Hewlett v. State*, 661 So. 2d 112, 115 (Fla. 4th DCA 1995) (citing

FLA. R. JUD. ADMIN. 2.050(b), and *Boeing Co. v. Merchant*, 397 So. 2d 399, 401 (Fla. 5th DCA 1981), *rev.*

*denied*, 412 So. 2d 468 (Fla. 1982)). Chief Judge Tuter's refusal to intervene—when he wasn't

authorized to do so—thus didn't *cause* any of Ms. Cave's supposed injuries. To the extent she was

injured at all, her injuries stemmed from the actions and decisions of *other* judges. *See, e.g.*, *Lewis v.*

*Governor of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019) ("Because the [defendant] didn't do (or fail to

do) anything that contributed to plaintiffs' harm, plaintiffs cannot meet Article III's traceability

requirement."); *see also Support Working Animals, Inc. v. Governor of Fla.*, No. 20-12665, ___ F.4th ___,

2021 WL 3556779, at *3 (11th Cir. Aug. 12, 2021) ("[W]e hold that the plaintiffs have failed to show

that any harm they have suffered, or are suffering, is traceable to the [defendant] because they can't

demonstrate that [the defendant] has any authority to enforce [the statute the plaintiffs challenge].").

For similar reasons, a favorable decision—*i.e.*, a decision by this Court ordering Chief Judge Tuter to

intervene in future actions against Ms. Cave—wouldn't redress Ms. Cave's alleged injury. That's

because—as we've said—Chief Judge Tuter would have no authority to use that injunction to stop

(or interfere with) the actions of his colleagues. *See Hewlett*, 661 So. 2d at 115 ("[A] chief judge exceed[s]

his authority by vacating a colleague's order in an appellate fashion."); *cf. Jacobson v. Fla. Sec'y of State*,

974 F.3d 1236, 1253–54 (11th Cir. 2020) ("Because the [third parties] are independent officials not

subject to the [defendant's] control, their action to implement the ballot statute may not be imputed

to the [defendant] for purposes of establishing traceability.").

Ms. Cave doesn't seem to have standing to prosecute Count II, either. Here, after all, Ms. Cave seeks only injunctive relief against Judge Stone with respect to a case Judge Stone adjudicated—and closed—five years ago. *See* Judge Stone Docket at 4 (entering "Final Judgment of Foreclosure" on September 28, 2016). There's thus no longer anything to enjoin. *See Benisek v. Lamone*, 266 F. Supp. 3d 799, 813 (D. Md. 2017) ("If the injury, if any, has long since concluded, there is nothing to enjoin.").[18] Note that this is true even if Judge Stone's decision continues to cause her *some* injury—the injury (we presume) of living without title to the foreclosed property—because a favorable decision by us would do nothing to redress that injury. Under Florida law, a trial court loses jurisdiction to hear a case once it enters final judgment. *See Shelby Mut. Ins. Co. of Shelby, Ohio v. Pearson*, 236 So. 2d 1, 4 (Fla. 1970) ("The trial court in this case lost jurisdiction to consider the merits of the cause upon entering the order of September 18, 1969, denying plaintiff's petition for rehearing. The trial court had no jurisdiction to consider plaintiff's 'Motion for Reconsideration,' and its order of October 17, 1969, purporting to set aside the summary judgment was null, void, and completely without effect."); *see also Castro v. Sun 'N Lake of Sebring Improvement Dist.*, ___ So. 3d ___, 2021 WL 3573023, at *2 (Fla. 2d DCA Aug. 13, 2021) ("Florida law treats rule 1.540(b) as a 'jurisdictional boundary.' And once beyond the reach of rule 1.540(b), a final order or judgment passes into the unassailable realm of finality." (cleaned up)).[19] The only two exceptions to this rule aren't applicable here.

---

[18] Of course, to the extent Ms. Cave wants us to ensure that Judge Stone doesn't render any unconstitutional decisions against her in the future, she's failed to show a "real and immediate . . . threat of *future* injury." *Houston*, 733 F.3d at 1329.

[19] *Accord Bank of New York Mellon v. Peterson*, 208 So. 3d 1218, 1221–22 (Fla. 2d DCA 2017) ("[O]nce a trial court has entered a final judgment, its jurisdiction to revisit the final judgment is limited. . . . Moreover, if a party is seeking relief under Florida Rule of Civil Procedure 1.540, the moving party must produce sufficient evidence of mistake, accident, excusable neglect or surprise as contemplated by rule 1.540(b) before the court's equity jurisdiction may be invoked. If the moving party fails to present evidence supporting a legal ground for relief from the judgment, it is an abuse of the trial court's discretion to vacate the judgment."); *Levy v. Levy*, 900 So. 2d 737, 745 (Fla. 2d DCA 2005) ("Trial courts have no authority to alter, modify or vacate final judgment except as provided in Florida Rule of Civil Procedure 1.530 and 1.540."); *King v. State*, 870 So. 2d 69, 70 (Fla. 2d DCA 2003) ("In

Under the first exception, a trial court can adjudicate a motion under Florida Rule of Civil Procedure 1.530—even after final judgment—so long as that motion is submitted within 15 days of the judgment. *See* FLA. R. CIV. P. 1.530 ("A motion for new trial or for hearing shall be served not later than 15 days after the return of the verdict in a jury action or the date of filing in a non-jury action. . . . A motion to alter or amend the judgment shall be served not later than 15 days after entry of the judgment, except that this rule does not affect the remedies in rule 1.540(b)."). The second exception allows trial courts to consider a motion to correct a "[c]lerical mistake[] in judgment, decrees, or other parts of the record and errors therein arising from oversight or omission," *see* FLA. R. CIV. P. 1.540(a), or to "relieve a party or party's legal representative from a final judgment, decree, order, or proceeding" due to "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial or rehearing; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) that the judgment, decree, or order is void; or (5) that the judgment, decree, or order has been satisfied, released, or discharged, or a prior judgment, decree, or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment, decree, or order should have prospective application," FLA. R. CIV. P. 1.540(b). Motions

---

*Shelby Mutual Insurance Co v. Pearson*, 236 So. 2d 1, 3 (Fla. 1970), the Florida Supreme Court held in a civil case that 'the trial court has no authority to alter, modify or vacate an order or judgment' except in the manner and time frame provided by the applicable rules of procedure. The supreme court rejected the argument that the trial court has jurisdiction to correct its own judgments at any time." (quoting *Shelby*, 236 So. 2d at 3)); *Cap. Bank v. Knuck*, 537 So. 2d 697, 698 (Fla. 3d DCA 1989) ("In sum, the lower court could do nothing after the appropriate disposition of the single authorized post-trial motion. Prohibition will therefore be granted to preclude its ongoing attempt to go further." (footnote omitted)); *Markevitch v. Van Harren*, 429 So. 2d 1255, 1256 (Fla. 3d DCA 1983) (per curium) ("It is obvious to us that the trial court lost jurisdiction of this cause on November 22, 1982 when it entered its order denying plaintiffs' motion for rehearing, and only a timely appeal from that order would vest jurisdiction in this court." (citations omitted)).

under Rule 1.540(b) "shall be filed within a reasonable time, and for reasons (1), (2), and (3) not more than 1 year after the judgment, decree, order, or proceeding was entered or taken." *Id.*

Needless to say, this federal lawsuit—filed *five years* after the final judgment and long after the Fourth DCA rejected Ms. Cave's appeal of Judge Stone's decision *as untimely*, *see* Judge Stone Docket at 5–12, 8—doesn't constitute either a motion for new trial under Rule 1.530 or a motion to amend under Rule 1.540. Judge Stone thus has no jurisdiction to do anything with respect to the final judgment Ms. Cave is challenging in our case. So, even if we agreed with Ms. Cave that Judge Stone's decision caused her some injury-in-fact, we couldn't order Judge Stone to redress that injury. *See Bischoff v. Myers*, 2000 WL 743686, at *2 (10th Cir. 2000) (affirming the district court's holding that the plaintiff lacked standing because, since the court lacked the authority to order the defendant to do anything, "the injury [plaintiff] allege[d] . . . [wa]s not redressable in court"). Ms. Cave, in sum, lacks standing to proceed with Count II.

But that's not nearly the end of Ms. Cave's standing problems. She also lacks standing to assert her claims against Judge Levy (Counts III & IV). In Judge Levy's case, Ms. Cave was charged with misdemeanor trespass for entering the property that had been taken from her in the foreclosure action before Judge Stone. *See* Judge Levy Docket at 3 (listing the charge as trespass); Information, *Florida v. Cave*, No. 18-000121-MM-10A, at 1 (Fla. Broward Cnty. Ct. Jan. 22, 2018). After some protracted litigation, Ms. Cave was convicted of misdemeanor trespass and sentenced to six months' probation. *See* Disposition, *Florida v. Cave*, No. 18-000121-MM-10A (Fla. Broward Cnty. Ct. Feb. 25, 2019). Ms. Cave appealed that judgment to the circuit court, which affirmed her conviction and sentence. *See* Opinion, *Cave v. Florida*, No. 18-50-AC-10A (Fla. 17th Cir. Ct. June 12, 2020); *see also* Judge Levy Docket at 5 (showing Ms. Cave's motions for a judgment of acquittal and noting that her appeal was "Completed"). She now wants us to enjoin Judge Levy from any future proceedings in that case. But there's nothing left to enjoin in Judge Levy's case because that case has long been closed. *See Benisek*,

266 F. Supp. 3d at 813 ("If the injury, if any, has long since concluded, there is nothing to enjoin.") (citing *Bloodgood v. Garraghty*, 783 F.2d 470, 475 (4th Cir. 1986) ("An injunction is a drastic remedy and will not issue unless there is an imminent threat of illegal action. An injunction issues to prevent existing or presently threatened injury. One will not be granted against something merely feared as liable to occur at some indefinite time in the future." (quotations omitted)); *I Play, Inc. v. D. Catton Enterprise, LLC*, 2014 WL 1119962, at *2 (W.D.N.C. Mar. 20, 2014) ("[Plaintiff's concession] indicates that Plaintiff no longer suffers from an immediate or future irreparable injury. Therefore, without any further showing by the Plaintiff, no injunction is warranted in this matter.").

Nor can Ms. Cave enjoin Judge Levy from adjudicating any *future* trespass cases against her. Here, again, she hasn't shown "a real and immediate—as opposed to merely conjectural or hypothetical—threat of *future* injury." *Houston*, 733 F.3d at 1328. That's principally because, for there to be any such future cases, Ms. Cave would have to trespass onto the foreclosed property again. In determining whether Ms. Cave has shown a likelihood of future injury, however, we must "assume[] that [she] will conduct [her] activities within the law and so avoid prosecution and conviction." *Lyons*, 461 U.S. at 102 (cleaned up). In any event, Ms. Cave hasn't shown that, if she is prosecuted in the future, her case is likely to fall before Judge Levy. To the contrary, as the new trespass case before Judge Lynch suggests, Ms. Cave's future cases—if there should be any—are very likely to be assigned to one of the many other judges currently serving on the county and circuit bench of Broward County.

Count IV presents a separate standing issue. In that count, Ms. Cave recharacterizes the misdemeanor-trespass prosecution as a dispute over title to the foreclosed property and blames Judge Levy for stripping her of that title. *See* Amended Complaint at 39 (alleging that "Judge Levy's wrongful actions" caused "the unlawful and unconstitutional taking of her property"); *see also* Response at 64 (insisting that the case before Judge Levy "was clearly a title dispute" and that "Judge Levy was well aware because she asked Cave early on why she thought she was the rightful owner"). But that's

absurd. The case before Judge Levy was a criminal case. *See* Judge Levy Docket at 2–3 (identifying the case type as "Misdemeanor" and the charge as "Trespass"). It didn't involve title to the foreclosed property at all—principally because the question of title had already been resolved in the separate civil case before Judge Stone (the subject of Count II). *Compare* Judge Stone Docket at 4 (entering a "Final Judgment of Foreclosure" on September 28, 2016) *with* Judge Levy Docket at 2 (showing that the criminal-trespass charge was filed on January 4, 2018—more than one year after Judge Stone entered final judgment in the foreclosure case). Judge Levy thus didn't cause the injury Ms. Cave identifies in Count IV—the "taking" of her property, *see* Amended Complaint at 39 (mentioning "the unlawful and unconstitutional taking of [Ms. Cave's] property due to Judge Levy's wrongful actions")—because the question of title to that property had already been decided by Judge Stone, *see generally id.* (showing no order relating either to a title dispute or to the "taking" of any property from Ms. Cave). As to Count IV, then, Ms. Cave didn't suffer the injury she complains of—that is, she didn't lose title to any property in the case before Judge Levy. Even if she had suffered the injury of lost title to property, that injury wasn't caused by Judge Levy: at best, as we've hinted, it was "caused by" Judge Stone. And a favorable decision by us wouldn't redress the alleged injury because Judge Levy—a criminal county-court judge—has no power to reverse the foreclosure orders of Judge Stone (a civil circuit-court judge). *Compare* FLA. STAT. § 26.012(2)(g) ("Circuit courts shall have exclusive original jurisdiction . . . [i]n all actions involving the title and boundaries of real property.") *with* FLA. STAT. § 34.01(1) ("County courts shall have original jurisdiction . . . [i]n all misdemeanor cases not cognizable by the circuit courts.) *and* FLA. STAT.  § 34.01(5) (establishing that "[a] county court is a trial court" without any appellate jurisdiction). For all these reasons, Ms. Cave lacks standing to proceed with Counts III and IV.

And we don't need to assess Ms. Cave's standing with respect to Count V because that claim has, in the last few weeks, become moot.[20] In that count, remember, Ms. Cave asks us to enjoin the criminal-trespass case before Judge Lynch. *See* Amended Complaint at 40. But the charges in that case have been dismissed, *see* Disposition, *Florida v. Cave*, No. 18-000174-CF-10A (Fla. 17th Cir. Ct. Aug. 30, 2021), and the case has been "[d]isposed," *see generally* Case Docket, *Florida v. Cave*, Case No. 18-000174-CF-10A (Fla. 17th Cir. Ct.),[21] so there's nothing for us to enjoin, *see Husain v. Cir. Ct. of St. Louis Cnty., Mo.*, 2018 WL 339304, at *2 (E.D. Mo. Jan. 8, 2018) ("To the extent plaintiff can be understood to ask this Court to dismiss, enjoin or otherwise intervene in a state criminal case that has already been dismissed by the state court, his claims are moot. To the extent plaintiff can be understood to ask this Court to dismiss, enjoin, or otherwise intervene in an ongoing state judicial proceeding, his claims are barred under the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971)."); *see also F.R. next friend of B.C. v. Gonsoulin*, 2021 WL 4259006, at *2 (11th Cir. Sept. 20, 2021) ("Cases become moot when there is no longer a live controversy or if the parties lack a legally cognizable interest in the outcome. In light of [the plaintiff's] graduation from high school, he no longer has a continuing interest in the declaratory and injunctive relief that he seeks[.]").[22]

---

[20] We recognize, of course, that neither party has addressed this issue—principally because Judge Lynch's case was dismissed so recently. But, as the Eleventh Circuit has explained, "because the question of mootness is jurisdictional in nature, it may be raised by the court *sua sponte*, regardless of whether the district court considered it or if the parties briefed the issue." *United States v. Hilario-Cana*, 779 F. App'x 700, 700 (11th Cir. 2019) (quoting *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1331–32 (11th Cir. 2005)).

[21] This is the full case docket as it appears on the website of the Broward Clerk of Court. *See* https://www.browardclerk.org/Web2/CaseSearchECA/CaseDetail/?caseid=OTg5MjA2MQ%3d%3d-1oC5mk9MJA8%3d&caseNum=18000174CF10A (last visited Sept. 27, 2021).

[22] There are two well-established exceptions to the mootness doctrine: (1) "voluntary cessation" and (2) "capable of repetition, yet evading review." *See Gonsoulin*, 2021 WL 4259006, at *1–*3. There's no evidence that either exception applies here—but, if Ms. Cave disagrees, she can explain her view in any objection she files to the Court's decision to take judicial notice of the state-court filings.

In a final attempt to establish standing, Ms. Cave claims that she's satisfied the Constitution's "case-or-controversy" requirement. Response at 21–23. After all, she says, she's been a defendant in three *cases* in state court and a fourth *case* here in federal court.[23] *Id.* As we've explained, however, having had a "case" (in the past) isn't enough to establish standing to seek injunctive relief (for things that might, but probably won't, occur in the future).

Counts I–IV are thus **DISMISSED** for lack of standing, and Count V is **DISMISSED** as moot.

## II.     The *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine[24] "is a jurisdictional rule that precludes the lower federal courts from reviewing state court judgments." *Alvarez v. Att'y Gen. of Fla.*, 679 F.3d 1257, 1262 (11th Cir. 2012). The rule "follows naturally from the jurisdictional boundaries that Congress has set for the federal courts": that (1) "federal district courts are courts of original jurisdiction," which "generally cannot hear appeals"; and that (2) "only the Supreme Court can reverse or modify state court judgments." *Behr v. Campbell*, 8 F.4th 1206, 1210 (11th Cir. 2021) (cleaned up). Under *Rooker-Feldman*, "a party losing in state court is barred from seeking what in substance would be appellate review of the state court judgment in a United States District Court based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994). "Allowing federal district courts to alter or directly review the judgment of state courts would violate both of those jurisdictional grants." *Behr*, 8 F.4th at 1210. In other words, the doctrine "means

---

[23] This fourth case was a lawsuit Ms. Cave filed before the Honorable Marcia G. Cooke, *see* Complaint, *Cave v. 2364 Wilton Drive et al.*, Case No. 19-cv-61777-MGC (July 16, 2019), in which Ms. Cave apparently challenged the foreclosure judgment in Judge Stone's case.

[24] The doctrine takes its name from two Supreme Court decisions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

that federal district courts cannot review or reject state court judgments rendered before the district court litigation began." *Id.* at *4.

*Rooker-Feldman* is "confined" to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of these judgments." *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). It's thus "a narrow jurisdictional doctrine," *Behr*, 8 F.4th at 1208, that "will almost never apply," *id.* at 1212. Indeed, *Rooker-Feldman* is not "a one-size-fits-all preclusion doctrine for a vast array of claims relating to state court litigation." *Id.* at 1208. At the same time, the doctrine "also does not prioritize form over substance." *Id.* at 1211. And so, "[i]t bars all appeals of state court judgments—whether the plaintiff admits to filing a direct appeal of the judgment or tries to call the appeal something else." *Id.* And, while courts often misapply the doctrine, *id.* at *4 (noting this Circuit's "overcomplicat[ion]" of the doctrine), the Eleventh Circuit has recently clarified that *Rooker-Feldman* presents "a simple inquiry" into "whether the plaintiff's claim directly challenged a state court loss," *id.*

When assessing the application of *Rooker-Feldman*, a "claim-by-claim approach is the right one" because the doctrine "requires a more targeted approach." *Id.* at 1213. For this reason, the Eleventh Circuit has admonished us to remember that "the claim for relief *does* matter." *Id.* at 1214. In other words, "[b]ecause *Rooker-Feldman* bars only claims that invite a district court's 'review and rejection' of a state court judgment, claims that seek only *damages* for constitutional violations of third parties—not relief from the judgment of the state court—are permitted." *Id.* (emphasis added). In this respect, we must consider whether the plaintiff "seeks relief for violations that happened during the state court process," rather than the "rejection of the state court judgment" itself. *Id.* at 1213; *see also id.* (holding that the "claim that various defendants . . . discriminated against [plaintiffs] on the basis of gender, religious belief, and disability . . . falls outside *Rooker-Feldman*" because they sought money damages

for constitutional violations that occurred in the state-court process and didn't ask for the "rejection of the state court judgment").

With this framework in mind, we turn to Ms. Cave's Amended Complaint. Count I, recall, castigates Chief Judge Tuter for failing to stop the (allegedly) unconstitutional actions of his colleagues. Of course, as we've seen, Ms. Cave doesn't have standing to pursue this claim. *See supra* Section I.B. If she did have standing, though, *Rooker-Feldman* wouldn't bar this cause of action. Again, *Rooker-Feldman* only applies when the federal-court plaintiff is seeking—in effect—to appeal an adverse state-court judgment. *See Berh*, 8 F.4th at 1214 ("[*Rooker-Feldman*] applies only when litigants try to appeal state court losses in the lower federal courts."). But Chief Judge Tuter entered no judgment with respect to Ms. Cave. Chief Judge Tuter, in fact, has never—so far as we know—adjudicated a case involving Ms. Cave. To the contrary, Chief Judge Tuter *refused* to interfere with any of Ms. Cave's cases. *See* Amended Complaint at 9–14. Since Ms. Cave isn't appealing any decision by Chief Judge Tuter—and given that she isn't a state-court "loser" in any case before the Chief Judge, *Exxon Mobile*, 544 U.S. at 284—*Rooker-Feldman* doesn't preclude Count I.

Nor does *Rooker-Feldman* bar Count V (against Judge Lynch). *Rooker-Feldman* applies only when the challenged "state-court judgments [were] rendered *before the district court proceedings commenced* and [the plaintiff] invit[ed] district court review and rejection of these judgments." *Exxon Mobile*, 544 U.S. at 284 (emphasis added). When Ms. Cave filed her complaint, Judge Lynch's case was still pending. *Compare* Verified Complaint (filed Sept. 25, 2020) *and* Amended Complaint (filed Feb. 25, 2021) *with* Disposition, *Florida v. Cave*, No. 18-000174-CF-10A (Fla. 17th Cir. Ct. Aug. 30, 2021) (showing that the charges against Ms. Cave in Judge Lynch's case weren't dropped until August 30, 2021). Judge Lynch thus hadn't rendered any judgment *before* our "proceedings commenced." *Exxon Mobile*, 544

25

U.S. at 284.[25] In fact, since the charges against Ms. Cave were ultimately dropped, Judge Lynch didn't render any "judgment" against Ms. Cave at all. And so, because she wasn't a state-court "loser," *Rooker-Feldman* doesn't preclude her claim.

By contrast, *Rooker-Feldman* plainly bars Counts II and III. In Count II, Ms. Cave seeks "an injunction to void and vacate every order issued by the Honorable Judge Barry Stone that violated due process of law[.]" Amended Complaint at 38. And, in Count III, Ms. Cave asks us to enter "a Judgment of Acquittal" in the case before Judge Levy and to "void and vacate" all of Judge Levy's orders. *Id.* at 39. But *Rooker-Feldman* precludes a "plaintiff's claim [that] directly challenge[s] a state court loss." *Behr,* 8 F.4th at 1211. And that's precisely what Ms. Cave is asking us to do here—to reverse and vacate the final (and adverse) decisions of two state-court judges. This we cannot do. *See In re Hazan*, ____ F.4th ____, 2021 WL 3907781, at *4 (11th Cir. Sept. 1, 2021) (applying *Rooker-Feldman* when the federal court was asked *either* to "f[i]nd the [state court] judgment wrongful" *or* to "overturn the state court order").

It's true, of course, that *Rooker-Feldman* generally doesn't bar a claim when the parties in the state and federal cases aren't identical. *See id.* at *3 ("*Rooker-Feldman* does not apply when the parties to the federal case are not the same as the parties to the state case."). But this general rule doesn't apply where, as here, the state-court loser names the state-court judge (or the state-court system) as the defendant in the federal action. *See, e.g., Nash v. Fifth Dist. Ct. of Appeal*, 806 F. App'x 870, 872 (11th Cir. 2020) ("Liberally construed, Nash argues on appeal that, in her amended complaint, she identified two due-process violations arising from the state-court proceedings: (1) the entry of the foreclosure judgment before she could present her affirmative defenses; and (2) the judges' application of the law-

---

[25] Plus, as we've said, the State recently dismissed all charges against Ms. Cave in the case before Judge Lynch—so we can't say that, in challenging Judge Lynch's handling of that case, Ms. Cave is appealing a state-court *loss.*

of-the-case doctrine to bar her from presenting argument on that issue in her second appeal. The district court did not err by concluding that the *Rooker-Feldman* doctrine barred both of these claims."); *Tarver v. Reynolds*, 808 F. App'x 752, 754 (11th Cir. 2020) ("The district court was right that the *Rooker-Feldman* doctrine bars most (if not all) of Tarver's claims. Tarver repeatedly argued in state court that Judge Reynolds lacked jurisdiction under federal law to divide his disability benefits. He makes the same argument here. But Judge Reynolds repeatedly rejected this claim. And Alabama's appellate courts repeatedly affirmed Judge Reynolds's ruling. Success in this lawsuit hinges on whether those courts were wrong." (citations omitted)). Counts II and III of our case are just the same. In them, Ms. Cave asks us to "void and vacate" (Amended Complaint at 38 & 39) every decision—including decisions relating to the exercise of subject-matter jurisdiction, *see e.g.*, *id.* at 16–17 (discussing the arraignment before Judge Levy, where Judge Levy rejected Ms. Cave's attempt to plead "NO JURISDICTION")—the state judges made in those two cases. *Rooker-Feldman* thus bars these counts.

The doctrine's application to Count IV is a bit murkier. In this count, remember, we aren't really sure what Ms. Cave is asking for. As we've explained, if she's seeking money damages, her official-capacity claim would be precluded by the Eleventh Amendment, and her individual-capacity claim would fail for lack of standing. *See supra* Sections I.A. & I.B. But her claim *wouldn't* be barred by *Rooker-Feldman* because she wouldn't be seeking "'review and rejection' of a state court judgment"— only "damages for constitutional violations." *Behr*, 8 F.4th at 1214. If, on the other hand, she's seeking injunctive relief, her claim would fail for lack of standing, *see supra* Section I.B—but, again, she'd avoid the *Rooker-Feldman* bar. That's because Ms. Cave has reframed the case before Judge Levy as a title dispute, *see* Amended Complaint at 17 (describing the case before Judge Levy as "a title dispute in excess of $523,000.00")[26]—even though the case plainly had nothing to do with any title. It was, as

---

[26] *See also* Response at 78 ("The Records will also show this was a title dispute between Cave and the Plaintiff in the civil case.").

we've said, nothing but a misdemeanor-trespass action. *See* Judge Levy Docket at 2 (identifying the case type as "Misdemeanor"); *see also* Information, *Florida v. Cave*, No. 18-000121-MM-10A, at 1 (Fla. Broward Cnty. Ct. Jan. 22, 2018) (charging Ms. Cave with misdemeanor trespass); Disposition, *Florida v. Cave*, No. 18-000121-MM-10A, at 1 (Fla. Broward Cnty. Ct. Nov. 27, 2018) (showing a conviction for misdemeanor trespass). And, since Judge Levy's case had nothing to do with any taking of Ms. Cave's property, it's hard to say that Count IV is asking us to overturn any order Judge Levy entered in that case. Judge Levy, after all, entered no order that could even plausibly be construed as working a taking of Ms. Cave's property. *See generally* Judge Levy Docket. Given the well-established rule that *Rooker-Feldman* is "a narrow and limited doctrine," *Behr*, 8 F.4th at 1213, that "will almost never apply," *id.* at 1212—and in light of Ms. Cave's status as a *pro se* litigant, *see Erickson*, 551 U.S. at 94 ("A document filed *pro se* is to be liberally construed[.]")—we don't believe that *Rooker-Feldman* bars Count IV.

Still, as we've said, Counts II and III are **DISMISSED** under *Rooker-Feldman*.

## III.    *Younger* Abstention

Although federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), there are times when "federal courts may and should withhold equitable relief to avoid interference with state proceedings," *31 Foster Child. v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003) (citing *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 359 (1989)). One common example of this tendency by federal courts to abstain from cases in which they otherwise have jurisdiction arises when a federal plaintiff asks a federal judge to enjoin, or interfere with, an ongoing state-court case. *See Younger*, 401 U.S. 37.[27] This doctrine—commonly referred to as the *Younger* abstention doctrine—"derives from

---

[27]     While *Younger* abstention is sometimes treated as a jurisdictional doctrine, *see, e.g.*, *D.L. v. Unified School Dist. No. 497*, 392 F.3d 1223, 1228 (10th Cir. 2004) ("*Younger* abstention is jurisdictional.");

the vital consideration of comity between the state and national government." *31 Foster Child.*, 329 F.3d at 1274. The Supreme Court has recognized a "longstanding public policy against federal court interference with state court proceedings." *Younger*, 401 U.S. at 44. And so, "the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." *Id.* at 45. That's because, "[w]here vital state interests are involved, a federal court should abstain unless state law clearly bars the interposition of the constitutional claims." *31 Foster Child.*, 329 F.3d at 1274 (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). "*Younger* governs whenever the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly." *Id.* at 1276–77 (quoting *Joseph A. ex rel. Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002)). In applying the *Younger* abstention doctrine, we ask three questions: (1) whether the proceedings "constitute an ongoing state judicial proceeding"; (2) whether "the proceedings implicate important state interests";

---

*Canatella v. California*, 404 F.3d 1106, 1113 (9th Cir. 2005) ("*Younger* abstention is essentially a jurisdictional doctrine[.]"), the Eleventh Circuit has made clear that it is not, *Walker v. City of Calhoun*, 901 F.3d 1245, 1254 (11th Cir. 2018) ("*Younger* is based not on jurisdiction, but the principles of equity and comity, and it commands that absent extraordinary circumstances federal courts should not enjoin pending state criminal prosecutions." (quotations omitted)); *Davis v. Gregory*, _____ F. App'x ___, 2021 WL 2944462, at *1 (11th Cir. July 14, 2021) ("*Younger* abstention is not jurisdictional[.]").

Because *Younger* abstention is not jurisdictional, there's some debate as to whether it should be considered under Rule 12(b)(1) or Rule 12(b)(6). *See Parker v. Jud. Inquiry Comm'n of the State of Ala.*, 212 F. Supp. 3d 1171, 1174 n.1 (M.D. Ala. 2016) (discussing this debate and collecting sources); *see also Pettway v. Marshall*, 2019 WL 3752475, at *2 (N.D. Ala. Aug. 8, 2019) ("[W]hether courts should analyze the *Younger* abstention doctrine under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6) is not entirely clear."). That said, courts often allow *Younger* abstention arguments to be "raised through a Rule 12(b)(1) motion," 5B Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure*, § 1350 at 96–100, and district courts in this Circuit often do just that, *see, e.g., Abusaid Hills Borough Cnty. Cir. Ct.*, 2020 WL 6060928, at *2–*3 (M.D. Fla. Oct. 14, 2020) (dismissing the complaint for lack of subject-matter jurisdiction under *Younger* abstention); *Parker*, 212 F. Supp. 3d at 1174 ("For reasons to be discussed, both motions to dismiss are due to be granted, and this action is due to be dismissed under Rule 12(b)(1) based on *Younger* abstention."); *Moore v. Jud. Inquiry Comm'n of the State of Ala.*, 200 F. Supp. 3d 1328, 1331 (M.D. Ala. 2016) ("The court has considered the Defendants' *Younger* abstention argument to be appropriately raised under Rule 12(b)(1)."). We'll do so, too.

and (3) whether there is "an adequate opportunity in the state proceedings to raise constitutional challenges." *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 432.

The *Younger* abstention doctrine plainly bars Count V. In that count, Ms. Cave asks us to issue "an injunction for dismissal of the felony case" before Judge Lynch. Amended Complaint at 40. She's thus unambiguously seeking an order to enjoin, or interfere with, Judge Lynch's case. *Younger*, 401 U.S. at 45. And the Defendants have easily met the remaining three *Younger* elements.

*First*, when Ms. Cave filed her complaint, the case before Judge Lynch was still pending. *Compare* Verified Complaint (filed Sept. 25, 2020) *and* Amended Complaint (filed Feb. 25, 2021) *with* Information, *Florida v. Cave*, No. 18-000174-CF-10A, at 1 (Fla. 17th Cir. Ct. Feb. 19, 2018) (charging Ms. Cave with armed trespass and criminal mischief) *and* Disposition, *Florida v. Cave*, No. 18-000174-CF-10A (Fla. 17th Cir. Ct. Aug. 30, 2021). When applying *Younger* abstention, "we look to the date the initial complaint was filed to determine if a case is ongoing." *Chestnut v. Canady*, 853 F. App'x 580, 583 (11th Cir. 2021). Here, the initial complaint was filed on September 25, 2020—approximately 11 months *before* the case before Judge Lynch was resolved (on August 30, 2021). So, for purposes of *Younger* abstention, the case Ms. Cave asks us to interfere with "constitute[s] an ongoing state judicial proceeding." *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 432.

Hoping to parry this conclusion, Ms. Cave notes that the order she *really* wants enjoined—Judge Lynch's order denying her motion to dismiss—is no longer pending. *See* Response at 75. And, she says, because her time to appeal that order has expired, she has no other recourse. *Id.*[28] But her

---

[28] Along similar lines, Ms. Cave suggests that she had no reason to appeal Judge Lynch's orders because she'd already filed an appeal *in a different* case. *See* Response at 75 ("Cave had no need to appeal any of Judge Lynch's orders because an appeal was already pending in the same circuit for the misdemeanor case before Judge Levy who was acting ultra vires."). But that other appeal—which (for whatever it's worth) the Fourth DCA rejected, *see* Judge Levy Docket at 5 (noting that the "Appeal [was] Completed" in Case No. 18-50-AC-10A and indicating that the DCA "Affirmed")—was of the case before Judge *Levy*. Response at 75. Lynch and Levy are not the same. Ms. Cave, in short, appears to

motion to dismiss was premised on her claim that Judge Lynch lacked subject-matter jurisdiction. *See* Motion to Dismiss, *Florida v. Cave*, No. 18-000174-CF-10A, at 2–11 (Fla. 17th Cir. Ct. Feb. 17, 2020); *see also* Amended Complaint at 29–30 (discussing Ms. Cave's challenges to Judge Lynch's jurisdiction). Under Florida law—as here—questions about the court's subject-matter jurisdiction are non-waivable, which means that Ms. Cave *could* still appeal Judge Lynch's decision to the Fourth DCA. *See In re D.N.H.W.*, 955 So. 2d 1236, 1238 (Fla. 2d DCA 2007) ("[T]he defense of lack of subject matter jurisdiction can be raised at any time."); *see also* FLA. R. CIV. P. 1.140(b) ("Any ground not stated [in the response] must be deemed waived except any ground showing that the court lacks jurisdiction of the subject matter may be made at any time."). In any event—and more fundamentally—to the extent Count V asks us to overturn Judge Lynch's jurisdictional decision, it impermissibly invites us to "enjoin [a] pending state court proceeding[.]" *Younger*, 401 U.S. at 41. To understand why, imagine for a moment what would happen if we agreed with Ms. Cave. How would that agreement be manifested? By an order reversing Judge Lynch's jurisdictional order, of course. And, since that federal order would—supposing such a thing possible—find that Judge Lynch had no jurisdiction, we have little difficulty concluding that such an order would necessarily "interfere with" Judge Lynch's handling of that case.

*Second*, the proceedings before Judge Lynch "implicate important state interests." *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 432. The Eleventh Circuit has repeatedly held that state courts have a powerful interest in adjudicating state criminal cases. *See, e.g.*, *Boyd v. Georgia*, 512 F. App'x 915, 918 (11th Cir. 2013) ("Here, the state is criminally prosecuting Boyd for a misdemeanor traffic violation. The state has an important interest in prosecuting this type of criminal offense."); *Turner v. Broward Sheriff's Off.*, 542 F. App'x 764, 766–67 (11th Cir. 2013) ("*Younger* abstention was appropriate because

_____

hold the mistaken belief that an appeal of the case before Judge Levy would automatically constitute an appeal of the case before Judge Lynch. But that's just not so.

. . . criminal proceedings involve important state interests."); *Christman v. Crist*, 315 F. App'x 231, 232 (11th Cir. 2009) ("The ability to prosecute DUI charges is an important state interest, and [the petitioner] will have no opportunity to raise his constitutional issues in state court proceedings.").

*Third*, as we've hinted, Ms. Cave had an "adequate opportunity in the state proceedings to raise [her] constitutional challenges." *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 432. Ms. Cave, in fact, appears to concede this point when she says that "Judge Lynch was much kinder to Cave . . . and kept letting her write motion after motion with encouragement and allowed Cave to present her case." Amended Complaint at 28; *see also* Judge Lynch Docket (showing that Ms. Cave filed ten motions—all of which Judge Lynch resolved). And, as we've suggested, Ms. Cave could then have appealed any of Judge Lynch's rulings to a higher court.[29] *See* FLA. R. APP. P. 9.030(b)(1)(A) ("District courts of appeal shall review by appeal . . . final orders of trial courts, not directly reviewable by the supreme court or a circuit court." (footnotes omitted)). She, in fact, *might* even have had a chance to appeal the case to the Florida Supreme Court. *See* FLA. R. APP. P. 9.030(a) (detailing the Florida Supreme Court's jurisdiction). "A federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *31 Foster Child.*, 329 F.3d at 1279 (cleaned up). Ms. Cave fails to show that these state courts are somehow incompetent—or inadequate—to handle the constitutional issues she might have raised. *See, e.g.*, Order, *Lewis v. Broward Cnty. Sheriff's Off., et al.*, No. 20-61585-CIV-ALTMAN, at 11 (S.D. Fla. Nov. 17, 2020), ECF No. 40 ("Besides his wholly conclusory contention that the state court erred in failing to release him, the Petitioner offers absolutely no evidence—let alone 'unambiguous authority'—for his view that his disagreement with the state court's bail decision cannot be adequately addressed by a motion for reconsideration[.] . . .

---

[29] We say *could have* because she no longer seems to have any reason to appeal Judge Lynch's decision—since the State dismissed the case a few weeks ago.

The Petitioner has thus failed to rebut the presumption that an adequate remedy is available to him in state court—and, as a result, this third factor, too, militates in favor of abstention.").

There are only three narrow exceptions to the general rule that a federal court should avoid enjoining, or interfering with, pending state criminal proceedings: (1) when there is evidence that the state proceedings are motivated by "bad faith and harassment," *Younger*, 401 U.S. at 49–50; (2) when there is a "great and immediate" danger of "irreparable injury" that "cannot be eliminated by [a] defense against a single criminal prosecution," *id.* at 45–46; or (3) when "there is no adequate alternative state forum in which the petitioner's constitutional claims can be raised," *For Your Eyes Alone, Inc. v. City of Columbus, Ga.*, 281 F.3d 1209, 1214 n.11 (citing *Younger*, 401 U.S. at 45, 53–54). Ms. Cave claims only that she meets the first of these exceptions. Even here, though, she offers just one line of argument—"[a]ll three actions were filed in bad faith," Response at 36—which is reason enough to reject her contention, *see Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it.").

At any rate, her argument fails because "*Younger* requires more" than "broad[] claims that the . . . state trial judge acted in bad faith." *Hudson v. Hubbard*, 358 F. App'x 116, 118 (11th Cir. 2009). To prevail under the bad-faith exception, a plaintiff "must make a 'substantial allegation' showing actual bad faith." *Id.* (citing *Younger*, 401 U.S. at 48). And, for a proceeding to qualify, it must be "brought without a reasonable expectation of obtaining a valid conviction." *Watson v. Fla. Jud. Qualification Comm'n*, 618 F. App'x 487, 490 (11th Cir. 2015) (citing *Redner v. Citrus Cnty.*, 919 F.2d 646, 649 (11th Cir. 1990)). Ms. Cave cannot make that showing here because the state-court documents suggest that she did, in fact, trespass on the foreclosed property. *See, e.g.*, Booking Report & Complaint Affidavit, *Florida v. Cave*, No. 18-000174-CF-10A, at 3 (Fla. 17th Cir. Ct. Jan. 5, 2018) (arresting officer testifying about seeing Ms. Cave "exit the [foreclosed] property" with a "twelve (12) inch butcher knife" after

she "unlawfully enter[ed] the structure").[30] Indeed, Ms. Cave herself acknowledges that she "was living at the subject property" when she was arrested for the trespass. Amended Complaint at 17. In sum, Ms. Cave's "vague and conclusory allegations that the defendants conspired to violate h[er] federal rights . . . do not rise to the level necessary to justify an exception to *Younger* abstention." *Davis v. Self*, 547 F. App'x 927, 931 (11th Cir. 2013).[31] "Under [such] circumstances, without more specific and plausible allegations of bad faith or harassment by the defendants, we can find no extraordinary circumstances justifying an exception to *Younger* abstention." *Id.*

We thus **DISMISS** Count V under the *Younger* abstention doctrine.

### IV.     Without Prejudice and Without Leave to Amend

The Defendants ask us to dismiss the Amended Complaint *with prejudice. See* Motion at 18–19. But we can't do that. Although "a district court need not allow a plaintiff to amend a complaint if the amendment would not serve to cure the defective pleading," *Witthold v. Miami-Dade Cnty.*, No. 11-21922-CIV, 2013 WL 3280039, at *6 (S.D. Fla. June 27, 2013) (Cooke, J.), a dismissal that's based on jurisdictional deficiencies must be *without* prejudice, *see Stalley*, 524 F.3d at 1232 ("[S]ince the district court did not have subject matter jurisdiction in this case, [the plaintiff's] complaint should have been dismissed without prejudice."); *see also Doane v. Tele Cir. Network Corp.*, 852 F. App'x 404, 408 n.2 (11th Cir. 2021) ("A dismissal for lack of standing, however, is a jurisdictional ruling that is entered without prejudice."). And—notably—a dismissal under *Younger* must likewise be without prejudice. *See Hale v. Pate*, 694 F. App'x 682, 685 (11th Cir. 2017) ("[A] complaint dismissed pursuant to *Younger* is without

---

[30] We consider this Booking Report & Complaint Affidavit because "evidence outside the four corners of the complaint can be considered when addressing *Younger/Middlesex* abstention." *Thompson v. Fla. Bar*, 526 F. Supp. 2d 1264, 1271 (S.D. Fla. Nov. 20, 2007) (Jordan, J.).
[31] This is true even though she has challenged Judge Lynch's subject-matter jurisdiction. *See Davis*, 547 F. App'x at 931 (holding that the exceptions to *Younger* abstention didn't apply even though the plaintiff had "challenged the subject-matter jurisdiction of the [state] courts on at least three separate occasions, and each of the challenges [had] been addressed and denied on the merits by the [state] courts").

prejudice." (citing *Old Republic Union Ins. Co. v. Tillis Trucking Co., Inc.*, 124 F.3d 1258, 1264 (11th Cir. 1997))).

Still, we dismiss the Amended Complaint *without leave to amend* because any further amendment would be futile. "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). Despite having already amended her complaint once in response to the Defendants' *Younger* and jurisdictional challenges—*see generally* Verified Complaint (containing general factual allegations); First Motion to Dismiss (presenting the same justiciability, standing, Eleventh Amendment, *Rooker-Feldman*, and *Younger* abstention arguments we reviewed here); Amended Complaint (including arguments regarding Eleventh Amendment immunity, *Rooker-Feldman*, and *Younger* abstention, and pointing to her role in *other* cases—presumably to meet the "case or controversy" requirement)—Ms. Cave has been unable to remedy her complaint's many fatal deficiencies. Where (as here) "the district court would lack subject matter jurisdiction over" any future amended complaint, "amendment would be futile." *Johnson v. Regions Mortg.*, 503 F. App'x 810, 811 (11th Cir. 2013); *see also Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) (holding that "denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal" under *Rooker-Feldman*); *Blakenship v. Claus*, 149 F. App'x 897, 899 (11th Cir. 2005) (recognizing that "any amendment would be futile" when "no amendment will create diversity jurisdiction" and "nothing will confer federal question jurisdiction under [federal statutes]"); *Hatcher v. Ala. Dep't of Hum. Servs., Child Support Enf't Div.*, 747 F. App'x 778, 782 (11th Cir. 2018) (holding that "the district court did not abuse its discretion in denying leave to amend when it concluded that amendment would be futile based on *Younger* grounds"). Our careful review of Ms. Cave's claims— and their many irreparable failings—leaves us with the firm impression that allowing her to amend *again* would be a waste of everyone's time.

C<small>ONCLUSION</small>

Ms. Cave may be dissatisfied with the Seventeenth Judicial Circuit. But her dissatisfaction doesn't authorize us to overturn or interfere with the decisions of Florida's state courts. After careful review, we **ORDER and ADJUDGE** that the Motion [ECF No. 24] is **GRANTED**. The Amended Complaint [ECF No. 23] is **DISMISSED without prejudice and without leave to amend**.[32]

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 27th day of September 2021.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record
        Annette Cave, *pro se*

---

[32] Because we dismiss Ms. Cave's Amended Complaint for lack of standing and for violating the *Rooker-Feldman* and *Younger* doctrines, we needn't address the Defendants' separate 12(b)(6) contentions (raised at Motion at 14–18). *See Bochese*, 405 F.3d at 974 ("In the absence of standing a court is not free to opine in an advisory capacity about the merits of the plaintiff's claims."); *Gardner v. Mutz*, 962 F.3d 1329, 1338 (11th Cir. 2020) (Where "we can dispose of th[e] case on standing grounds alone," we "needn't—and won't—address . . . the merits."). That's because, when a "jurisdictional requisite" is lacking, "we are powerless to hear the case." *A&M Gerber Chiropractic*, 925 F.3d at 1216. And "[a]ny substantive commentary and analysis is inconsistent with abstention for lack of jurisdiction based on *Younger*." *News-J. Corp. v. Foxman*, 939 F.2d 1499, 1511 (11th Cir. 1991); *see also Doby v. Strength,* 758 F.2d 1405, 1406 (11th Cir. 1985) (noting that the district court should abstain from considering the merits of the plaintiff's § 1983 action until the state-court proceedings are closed).